UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DUANE A. HINES, *on behalf of himself and*
*all others similarly situated,*

                     Plaintiff,

      v.

EQUIFAX INFORMATION
SERVICES LLC,

                  Defendant.
--------------------------------------------------------x

**ORDER ADOPTING
REPORT AND RECOMMENDATION**

19-CV-6701 (RPK) (JAM)

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Duane A. Hines brings a putative class action against defendant Equifax

Information Services LLC, alleging violations of the Fair Credit Reporting Act ("FCRA") and the

New York Fair Credit Reporting Act ("NYFCRA").  Plaintiff moved to certify a nationwide FCRA

class and three claim-based subclasses.  *See* Mot. to Certify Class (Dkt. #43).  In a report and

recommendation ("R. & R."), then-Magistrate Judge Reyes recommended certifying two of

plaintiff's proposed subclasses and appointing plaintiff as the class representative and his counsel

as class counsel.  *See* R. & R. (Dkt. #48).  Defendant timely objected to Judge Reyes's

recommendation that two proposed subclasses be certified.  *See* Obj. (Dkt. #53).  For the reasons

set out below, Judge Reyes's R. & R. is adopted, with the exception that the subclasses must have

a defined end date.

## STANDARD OF REVIEW

      The standard of review a district court should use when considering an order or

recommendation from a magistrate judge depends on whether the issue is "dispositive of a party's

claim or defense."  Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1).  Motions for class certification

are treated as dispositive matters under Rule 72.  *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG),

2010 WL 1423018, at *1 (E.D.N.Y. Apr. 9, 2010); *see* 28 U.S.C. § 636(b)(1)(A).  If a party timely objects to a magistrate judge's recommendation on a dispositive issue, then the district court must "determine de novo" those parts of the ruling that have been "properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  Those parts of an R. & R. that are uncontested or are not properly objected to may be reviewed, at most, for "clear error."  *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y. 2019) (citation omitted); *see Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citing Fed. R. Civ. P. 72 advisory committee's note to 1983 addition).

## DISCUSSION

I assume familiarity with the underlying facts and procedural history.  For the reasons stated below, Judge Reyes's R. & R. is adopted in substantial part. Plaintiff is directed to file a letter proposing a definite end date to the classes within thirty days of this order.

### I.    Standing

Equifax offers no basis to set aside Judge Reyes's conclusion that plaintiff has adequately established standing for purposes of class certification.  "[A] plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)), "and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants," *ibid.* (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).  While "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), a plaintiff is not required to show that each class member has standing before a class can be certified, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006); *see Barrows v. Becerra*, 24 F.4th 116, 128 (2d Cir. 2022); *see also* 1 William B. Rubenstein, *Newberg and*

*Rubenstein on Class Actions* § 2:3 (6th ed. 2024) ("[T]he vast majority of courts continue to heed the basic rule that the standing inquiry focuses on the class representatives, not the absent class members.").

Here, plaintiff has met the prerequisites for class standing with respect to both the New York Subclass and the Capital One Subclass. As Judge Reyes determined, Hines himself has Article III standing with respect to these claims. Specifically, Hines plausibly alleges as relevant to the New York Subclass claims that Equifax's failure to properly reinvestigate his claims caused him to waste time and money. R. & R. 18–19. He further alleges that he suffered reputational harm when the disputed information and assertedly inaccurate information was shared with a third party. *Id.* at 19. Hines also plausibly alleges that he suffered injury because Equifax failed to adopt reasonable procedures to ensure that it only shared consumer information for permissible purposes as required by 15 U.S.C. § 1681e(a). R. & R. 20. He alleges that failure led Equifax to furnish Hines's personal information to Capital One without authorization and then to report that unauthorized transaction to Synchrony Bank in violation of 15 U.S.C. § 1681b(c). *Id.* at 19, 23–24. As a result, Hines allegedly suffered reputational harm—a concrete injury sufficient to confer standing. *Id.* at 23–24; *TransUnion*, 594 U.S. at 425.

Judge Reyes also correctly determined that Hines has class standing. "[A] plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' . . . and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants,'" *NECA-IBEW*, 693 F.3d at 162 (citations omitted). Hines alleges that he was injured by Equifax's policy against reinvestigating disputed inquiries, *see* R. & R. 18–20, and by Equifax's inadequate procedures to prevent unauthorized inquiries, *see id*.

3

at 20–24.  Because Equifax allegedly applies those policies and procedures uniformly to all consumers, *see id.* at 28, Hines' injuries are sufficiently similar to those suffered by other members of the proposed class that their interests in litigating this case are aligned.  *See NECA-IBEW*, 693 F.3d at 164 (finding that a class representative had class standing because all class members received the same misleading information and therefore had the same stake in litigating whether the lenders had followed guidelines).

## II.   Personal Jurisdiction

The Court has personal jurisdiction over the class claims that Judge Reyes recommended certifying.  Equifax's objections to the exercise of personal jurisdiction over the Capital One Subclass insofar as the class contains out-of-state class members are overruled, for essentially the reasons stated in the opinions of the three courts of appeals to address personal jurisdiction over nationwide classes.  *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 374–75 (3d Cir. 2022); *Lyngaas v. Curaden AG*, 992 F.3d 412, 433 (6th Cir. 2021); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020).

Equifax does not dispute that this Court has specific jurisdiction over the claims of the named plaintiff, Mr. Hines.  And in a class action, only the named plaintiffs are parties in important respects.  For example, only the named plaintiffs, and not unnamed class members, control the course of the lawsuit through tools such as discovery and summary judgment.  *See Devlin v. Scardelletti*, 536 U.S. 1, 15–16 (2002) (Scalia, J., dissenting) (noting these limits); *id.* at 9–10 (majority opinion) (noting that unnamed class members are parties only "for some purposes and not for others").  "[A]s a practical matter, a defendant litigates against only the class representative."  *Lyngaas*, 992 F.3d at 435.

Critically, unnamed class members are *not* treated as parties in the contexts most analogous to personal jurisdiction—those involving where a lawsuit may be brought.  The citizenship of

unnamed class members is disregarded in determining whether a lawsuit satisfies the complete diversity requirement needed for subject-matter jurisdiction under 28 U.S.C. § 1332. *Scardelletti*, 536 U.S. at 9. And unnamed class members are also disregarded when establishing venue. *Mussat*, 953 F.3d at 447; *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 87 (2d Cir. 1990) (citations omitted) (noting "class status may expand the number of districts where venue is proper"). Equifax offers no reason "why personal jurisdiction should be treated any differently" from these other questions involving where suit may be filed. *Mussat*, 953 F.3d at 447. I therefore conclude that specific jurisdiction over a nationwide class action is assessed based on the citizenship of the named plaintiff, without inquiry into the citizenship of unnamed class members.

This conclusion accords with longstanding practice that has permitted nationwide class actions to go forward when specific jurisdiction is proper based on the defendant's in-state contacts with the named plaintiff. *See, e.g.*, *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) (nationwide class brought in Kansas against a non-resident corporation); *see also Mussat*, 953 F.3d at 445 ("Before the Supreme Court's decision in *Bristol-Myers [Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017)], there was a general consensus that due process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant.").

Contrary to Equifax's arguments, the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), does not call into question this predominant approach to personal jurisdiction in class actions. *Bristol-Myers Squibb* was not a class action, and so the Supreme Court had no occasion in that case to consider whether unnamed class members should be treated as parties for purposes of personal-jurisdiction analysis. Instead, in *Bristol-Myers Squibb*, several hundred *named* plaintiffs who were undisputedly parties sought

to pursue similar individual claims against a defendant through a single, consolidated suit. 582 U.S. at 259. In a "straightforward application . . . of settled principles of personal jurisdiction," the Court found no jurisdiction over the claims of non-resident plaintiffs which lacked any connection between the forum state. *Id.* at 268. That decision does not call into question the authorities noted above, which suggest that in class actions, only the named plaintiff—and not unnamed class members—is considered a party for purposes of jurisdictional analysis. *See Mussat*, 953 F.3d at 446–47 (noting that class actions "are different from many other types of aggregate litigation, and that difference matters in numerous ways for the unnamed members of the class"). Equifax's objections to personal jurisdiction over the nationwide Capitol One class are therefore overruled.

## III.   Class Certification Requirements

Equifax has failed to demonstrate error in Judge Reyes's determination that both the New York and Capital One Subclasses satisfy the requirements for class certification. Equifax argues that Judge Reyes erred in assessing predominance and superiority, but its arguments fail to persuade.

### A.   Predominance

Plaintiff has demonstrated predominance for both the New York and Capital One Subclasses. A court can only certify a class pursuant to Rule 23(b)(3) upon a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The standard for predominance is "more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . , the predominance criterion is far more demanding."). To evaluate predominance, a court must consider "(1) the elements of the claims and defenses to be

litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Comm'cns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (citation and quotation marks omitted). A court should not certify a class under Rule 23(b)(3) if common issues "will be overwhelmed by individual issues." *Ibid.* Standing factors into the predominance inquiry because it is part of "establish[ing] each class member's entitlement to relief." *Ibid.* (citation and quotation marks omitted). Courts should consider the balance of individualized and common proof that will be required to establish absent class members' standing when conducting the predominance analysis. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 n.12 (9th Cir. 2022) ("Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions."); *Huber v. Simon's Agency*, 84 F.4th 132, 156 (3d Cir. 2023); *Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1275, 1277 (11th Cir. 2019).

### 1.     New York Subclass

Plaintiff has adequately demonstrated that common questions of law or fact predominate over individualized questions for the New York Subclass pursuing claims under N.Y. Gen. Bus. Law § 380-f(a), and that the issues on which common questions predominate are more substantial than those subject only to individualized proof. The FCRA outlines specific procedures that consumer reporting agencies must follow to ensure the proper reinvestigation of disputed information. It requires that if a consumer notifies a consumer reporting agency of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). New York General Business Law § 380-f imposes similar requirements. *See* N.Y. Gen. Bus. L. § 380-f(a); *Mader v. Experian*

*Info. Sols., Inc.*, 56 F.4th 264, 267 n.1 (2d Cir. 2023) ("Because the language of the NYFCRA and the FCRA is substantially similar, the two statutes must be construed in the same way." (citation and quotation marks omitted)).

To succeed on claims under this provision, a plaintiff must establish three elements.  First, the plaintiff must establish that "the disputed information is inaccurate."  *Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 WL 2467662, at *8 (E.D.N.Y. Feb. 24, 2022) (quoting 15 U.S.C. § 1681i(a)(1)(A); *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019)).  Second, the plaintiff must show that he "notified the consumer reporting agency directly of the inaccurate or incomplete information." *Cohen v. Equifax Info. Servs., LLC*, No. 18-CV-6210 (JSR), 2019 WL 5200759, at *5 (S.D.N.Y. Sept. 13, 2019) (citation omitted), *aff'd*, 827 F. App'x 14 (2d Cir. 2020); *see Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir. 1997).  And third, the plaintiff must show that the consumer reporting agency failed to conduct a "reasonable reinvestigation" to determine the accuracy of the disputed information.  *Khan*, 2019 WL 2492762, at *3 (citation omitted).  Equifax has not shown error in Judge Reyes's determination that common issues susceptible to class-wide proof predominate with respect to these claims.

The inaccuracy element presents common questions, because members of the New York subclass will rely on common evidence to make a *prima facie* showing that their credit reports are inaccurate.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (explaining that "a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof'") (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50, at 196–97 (5th ed. 2012)).  Specifically, plaintiff will put forward evidence from Equifax's records that the company received a hard-inquiry dispute

concerning the credit report of each member of the New York Subclass, which the company characterized as raising the objection "unauthorized" or "not mine."  This evidence of disputes is common evidence that those customers' credit reports inaccurately noted hard inquiries.  *See*, *e.g.*, *Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 346 (N.D. Ga. 2022) (concluding that "class members . . . can establish inaccuracy, under Plaintiff's theory, by common evidence: class members' 300,000-plus dispute letters and Equifax's cataloguing of those letters as 'unauthorized' or 'not mine'").

The sufficiency of Equifax's reinvestigation procedures is also susceptible to common proof—a point that Equifax does not dispute.  *See* Obj. 12–16.  Plaintiff expects to put forward evidence that during the proposed class period, Equifax has a standard policy of addressing disputes of hard inquiries by confirming that the customer's record was accessed and then sending customers a letter describing inquiries as a factual record of file access, without conducting a further investigation.  Whether such a procedure satisfies the reinvestigation requirement of the NYFCRA is a common question that will not require individualized proof to determine.

While determining whether each class member "directly" disputed the hard inquiry—rather than doing so through a third party such as a credit-repair organization—may require individualized inquiry, common issues still predominate for a claim "where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria, thus rendering unnecessary an evidentiary hearing on each claim," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 306 (E.D.N.Y. 2013) (citation omitted); *see Famular v. Whirlpool Corp.*, No. 16-CV-944 (VB), 2019 WL 1254882, at *9 (S.D.N.Y. Mar. 19, 2019); 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:50 (6th ed. 2024).  Here, as in *Rivera*, dispute letters retained by Equifax can be sorted based

9

on objective criteria to determine if they were sent directly by the consumer or instead by a credit-repair organization.  *See Rivera*, 341 F.R.D. at 347; *Norman v. Trans Union, LLC*, 479 F. Supp. 3d 98, 141 (E.D. Pa. 2020) ("Differentiating between bona fide consumers and third-party organizations does not seem like a difficult task, and certainly is not sufficient to defeat predominance."); *see also Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2009).  Accordingly, the prospect that this element will require individualized inquiry does not defeat predominance.

Standing, too, presents common questions.  The New York Subclass is defined to include only those consumers who received a specific form letter in response to disputes of a hard inquiry. As a result, common evidence can be used to establish that the class members spent time and effort disputing an inquiry with Equifax—time and effort that Hines alleges was wasted because Equifax does not actually reinvestigate inquiries in response to consumer disputes.  As Judge Reyes noted, wasted time is an injury sufficient to establish standing under Article III.  *See* R. & R. 19.

To be sure, the damages owed to each class member may vary based on the time and money they spent disputing inquiries, but this individualized determination is not substantial enough to defeat predominance.  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages[.]'" *Bouaphakeo*, 577 U.S. at 453–54 (quoting 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005)); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (deeming it "clear that individualized monetary claims belong in Rule 23(b)(3)").  As other courts frequently find in the FCRA damages context, the determination of individual damages does not defeat predominance.  *See, e.g.*, *Feliciano v. CoreLogic Rental Prop. Sols., LLC*,

332 F.R.D. 98, 107 (S.D.N.Y. 2019); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307–10 (N.D. Cal. 2015).

Accordingly, Equifax's objections to Judge Reyes's conclusions regarding predominance for the New York Subclass are overruled.

### 2.    Capital One Subclass

The predominance element is also met with respect to the Capital One Subclass pressing claims under Section 1681e(a).  Section 1681e(a) requires consumer reporting agencies to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b." 15 U.S.C. § 1681e(a).  It further specifies that a consumer reporting agency may not "furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b." *Ibid.* Section 1681b, in turn, delineates several "permissible purposes" for providing consumer reports.

Judge Reyes did not err in determining that common questions predominate with respect to these claims on behalf of the Capital One Subclass.  Equifax appears to acknowledge that these class claims present common questions of law concerning whether Equifax's procedures meet the minimum requirements of Section 1681e(a) and whether those procedures were objectively reasonable as applied to its transactions with Capital One.  *See* Obj. 17–18.  And while Equifax suggests that individualized proof will be required to "evaluat[e] whether Capital One had a permissible purpose for [each] specific inquiry," *id.* at 18, class members will be able to put forward *prima facie* evidence that these hard inquiries were not *bona fide* in the form of their dispute letters, *see supra* pp. 8–9.  And as Judge Reyes concluded, "even if showing a permissible purpose as to certain class members would serve as a complete defense, the fact that such a defense 'may arise and may affect different class members differently does not compel a finding that

individual issues predominate over common ones.'"   R. & R. 53 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)).

Individualized questions also do not predominate with respect to establishing the class members' standing.   As noted above, the class will be able to present common proof that class members' protected information was disclosed without their authorization.   As Judge Reyes determined, *see* R. & R. 22–23, this unauthorized disclosure is "closely related to—if not the same as—a harm that has traditionally been regarded as providing a basis for a lawsuit: intrusion upon seclusion," *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019); *see TransUnion*, 594 U.S. at 425.

Finally, just as with the New York Subclass claims, the prospect of individualized damages inquiries does not establish that certification is improper.  *See, e.g.*, *Bouaphakeo*, 577 U.S. at 453–54.

## B. Superiority

Finally, Equifax's objection that the New York Subclass does not meet Rule 23's superiority requirement is overruled.  *See* Obj. 21–22.  As a preliminary matter, Equifax did not raise any argument concerning superiority in front of the magistrate judge.  *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Class Cert. (Dkt. #45).  Equifax argues that its superiority argument was not yet "ripe" because the *Rivera* class had not yet been certified by the Northern District of Georgia when it filed its opposition to plaintiff's motion for class certification.  Obj. 22 n.10.  But the *Rivera* class was certified on March 30, 2022—a development that plaintiff filed on the docket, *see* Notice of Supp. Authority (Dkt #47)—several months before Judge Reyes issued his R. & R. What's more, Judge Reyes's analysis of the superiority element for the nationwide FCRA class turned on the first-filed rule, which Equifax could have argued militated against certification of the New York Subclass as well even before the *Rivera* class was certified.  R. & R. 57–59.  "In

this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, No. 06-CV-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (citations and quotation marks omitted) (collecting cases). So Equifax's objection is not properly before the Court.

Nevertheless, the New York Subclass is the superior method for adjudicating the class's claims. To assess superiority, Rule 23(b)(3) advises courts to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Equifax argues that the New York Subclass should not be certified under these principles because it "suffers from the same superiority problems" as the nationwide FCRA class that Judge Reyes recommended against certifying, Obj. 21, but that is not so. Judge Reyes found that plaintiff's proposed nationwide FCRA class would not be a superior method of adjudicating the asserted FCRA claims because the earlier-filed *Rivera* lawsuit in the Northern District of Georgia "share[d] the same class members and the same reinvestigation claims brought under the FCRA." R. & R. 58. Thus, he wrote, "the existence of an overlapping action concerning the same claims and class members indicates that there is no strong interest in individual control of litigation and no particular desirability in concentrating litigation in this forum." *Id.* at 58–59.

Contrary to Equifax's submissions, that logic does not control the New York Subclass. The *Rivera* lawsuit does not involve a claim under the NYCFRA at all, and therefore does not provide a forum to vindicate class members' NYCFRA rights. *See id.* at 59 (noting that New York

13

Subclass "contemplate[s] separate claims not covered by the *Rivera* action, such that the extent and nature of that litigation is not relevant to the decision").  Moreover, the NYCFRA claims arise under New York law, making this forum particularly suitable for their litigation.  *Id.* at 59–60. Equifax's objections thus fail to demonstrate error in Judge Reyes's superiority determination.

### C.    Class End Date

While the parties did not develop before Judge Reyes any arguments concerning the end date of the Rule 23 class period, it is appropriate to set a fixed end date—instead of defining the class to run through the time of judgment.  *See Hart v. Rick's NY Cabaret Int'l, Inc.*, No. 09-CV-3043 (PAE), 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013) (compiling authorities explaining that a class period requires "a clear end-date").  Because neither party has proposed a defined end date for the class period, plaintiff is directed to propose an end date for his class within thirty days of this order.  Defendant may submit a response within fourteen days of plaintiff's submission.

### CONCLUSION

Magistrate Judge Reyes's R. & R. is adopted as modified by this Memorandum and Order. Plaintiff's motion to certify a class and appoint a class representative is denied in part and deferred in part.  Within thirty days of this order, plaintiff shall propose an end date for his class.  Defendant may submit a response within fourteen days of plaintiff's submission.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 10, 2024
       Brooklyn, New York

14